**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TEXTRON FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-09-1288-M |
| | ) | |
| WALKER RV CENTER, INC., | ) | |
| DON W. WALKER, JR., | ) | |
| AND CHRISTY M. WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support [docket no. 32], filed March 9, 2010. On April 19, 2010, defendants filed their response, and on May 10, 2010, plaintiff filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.      INTRODUCTION

Plaintiff is a commercial lender organized under the laws of the State of Delaware with its principal place of business in the State of Rhode Island. Defendant Walker RV ("defendants") is an Oklahoma corporation with its principal place of business at 11801 South Portland, Oklahoma City, Oklahoma. Defendants Don W. Walker Jr. and Christy M. Walker are both citizens of Oklahoma ("defendants"). On or about November 29, 2000, the parties entered into a Wholesale Security Agreement ("Agreement"). Under the Agreement plaintiff agreed to finance defendants' acquisition of RV inventory. On or about August 11, 2003 the Agreement was amended. The Agreement set forth the general terms of the relationship between the parties including the specific

terms of each advance of credit, payment and the maturity date on any remaining principal balances. Each month plaintiff forwarded to defendants a monthly Billing Statement. Under the Agreement defendants agreed to hold the proceeds of any sales in trust for plaintiff and to promptly remit the proceeds to plaintiff.

On October 22, 2009, October 29, 2009 and November 5, 2009, during three separate inventory inspections plaintiff discovered defendants had sold units of inventory financed by plaintiff without remitting payment. The failure to remit payment to plaintiff for units sold is an event of default under the Agreement. Under the Agreement, upon an event of default plaintiff may elect to accelerate all outstanding obligations of defendants. On November 10, 2009, plaintiff by letter notified defendants of their default under the Agreement and demanded payment for the units sold. On November 17, 2009, by letter plaintiff accelerated all outstanding obligations of defendants. On November 20, 2009, plaintiff filed this action seeking damages in the amount of not less than $685,389.66, plus accruing interest, expenses, fees, reasonable attorney fees and cost.

On December 7, 2009, defendants voluntarily surrendered the remaining inventory in its possession that was financed by plaintiff. On December 16, 2009, plaintiff faxed letters to potential buyers requesting bids for the new repossessed inventory. By certified mail also on December 16, 2009, plaintiff gave notice to defendants of a private sale of the repossessed inventory to occur on or after December 26, 2009. Between January 8, 2010 and January 12, 2010, the inventory, originally financed at $1,141,684.64, was sold by plaintiff reducing the outstanding principal balance owed by defendants. Defendants have each admitted to breaching the terms of the Agreement but take issue with the methodology of the sale of the repossessed inventory and the damages demanded by plaintiff.

II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    DISCUSSION

   A.     Breach of Contract

It is undisputed that the agreement between the parties is to be interpreted and enforced according to the laws of the State of Rhode Island.  Under Rhode Island law, a breach of contract claim requires the existence of a contract, a breach, and damages. *Petrarca v. Fidelity & Cas. Ins. Co.* 884 A.2d 406, 410 (R.I. 2005).  Here, it is undisputed that a contract exists, and defendants appear to concede that there has been a breach of the terms of the agreement between the parties.

3

Thus, the remaining issue is whether plaintiff has suffered damages, and if so, in what amount. In their objection defendants admit selling four units of inventory for which no payment had been remitted to plaintiff. *See* defendants' response to paragraphs 23, 24 and 25 of plaintiff's motion for summary judgment. Defendants also admit the failure to remit payment for sold units is an event of default under the Agreement. *See* defendants' response to paragraph 26 of plaintiff's motion for summary judgment. Finally, defendants admit to being in breach of its obligations under the agreement. *See* defendants' response to paragraph 45 of plaintiff's motion for summary judgment. Defendants having admitted to being in breach of the Agreement, the Court finds the parties entered into a valid agreement and that the defendants have in fact breached that agreement.

Accordingly, the Court finds that plaintiff's motion for summary judgment as to plaintiff's breach of contract claims (Count I, III, and IV of the Complaint) should be granted.

B.      Damages

Plaintiff contends the sale of the collateral was conducted in a commercially reasonable manner and thus it is entitled to damages. In support of its contention that the sale was conducted in a commercially reasonable manner, plaintiff submits the affidavit of Brent Layton, Vice President - DFG Special Assets for Textron Financial Corporation. In his affidavit Layton states, "the sales were conducted in TFC's normal and customary way, and in the normal and customary way that such sales are conducted in the industry." *See* Exhibit A, Plaintiff's Motion for Summary Judgment. Plaintiff contends it sold the inventory through both direct private sale and a nationwide online auction to competing dealers in an effort to obtain the best price. Plaintiff also denies the accuracy of the values of the collateral identified by defendants.

Defendants contend the sale of the inventory by plaintiff was not conducted in a

commercially reasonable manner. Defendants contend plaintiff failed to follow the customary process used by Oklahoma lending institutions in the sale of similar units which is to transfer the inventory to a large dealer auto auction, such as Dallas, Texas, in order to get the best price from competing dealers. Defendants also contend that in a majority of the sale transactions plaintiff received less than used whole sale trade-in value for this new inventory as determined by the N.A.D.A. Defendants contend plaintiff sold a majority of the new RV units at $10,000.00 or 25% to 35% below the used wholesale trade-in value. Defendants also contend that television sets missing from some of the inventory should not result in such a reduction in value.

Plaintiff has filed this lawsuit in an attempt to obtain deficiency judgment resulting from plaintiff's private and on-line sale of the collateral. Plaintiff contends the sale of the repossessed collateral was conducted in its normal and customary way and the customary way in the industry. Plaintiff contends internet sales are reasonable and likely to bring the better price. Defendants contend plaintiff failed to sale the collateral in a commercially reasonable manner. Defendants contend the customary process in the sale of repossessed new inventory by a lending institution is to transfer the inventory to a larger dealer auction. As the secured party, plaintiff has the burden of proving the sale was conducted in a commercially reasonable manner. *Am. State Bank v. Van De Nieuwegiessen*, No. CIV-09-322-L, 2009 WL 3152927 at *4 (W.D. Okla. Sept. 24, 2009). In order for the court to review the reasonableness of the sale every aspect of said sale including method, manner, time, place, and terms must be disclosed. *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.* 124 F.3d 252, 264 (1st Cir. 1997). Any commercially reasonable sale, must also comport with prevailing practices among those engaged in the same or comparable business. Id.

The Court has reviewed the parties submissions, viewing in the light most favorable to

defendants, the Court finds there is a genuine issue of material fact as to whether the sales were conducted in a commercially reasonable manner. Accordingly, because there is a genuine dispute regarding whether the bases for plaintiff's damage claims, the sale of the RV collateral, was conducted in a reasonable manner, the Court finds that plaintiff is not entitled to summary judgment on its damage claims.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment [docket no. 32] as follows:

(A)     The Court GRANTS plaintiff's motion for summary judgment as to plaintiff's breach of contract claims, and

(B)     The Court DENIES plaintiff's motion for summary judgment as to plaintiff's damage claims.

**IT IS SO ORDERED this 11th day of August, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE